UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

MICHAEL J. WELLS,

    Plaintiff,

v.

LINDA McMAHON, *in her official capacity as the Administrator of the U.S. Small Business Administration,* and the NEVADA STATE DEVELOPMENT CORPORATION,

    Defendants.

Case No. 3:18-cv-00297-LRH-CBC

ORDER

    Defendants Linda McMahon, in her official capacity as the Administrator of the United States Small Business Administration ("SBA") and the Nevada State Development Corporation ("NSDC") have each filed separate motions to dismiss (ECF Nos. 8, 13) the complaint of plaintiff Michael J. Wells (ECF No. 1-2). Wells filed responses to both sets of motions (ECF Nos. 10, 27), and the moving parties timely replied (ECF Nos. 11, 38). For the reasons stated below, the Court grants the SBA's motion to dismiss and the NSDC's motion to dismiss.

### I. Factual Background and Procedural History

    The following facts are adduced from Wells's complaint, which, for the purpose of resolving the motions to dismiss, are presumed to be true. Wells was an investor in, and the manager of, a company called Main Street Galleria, LLC. (ECF No 1-2 at 5). On December 27, 2007, NSDC executed an SBA loan for $1,789,000 (SBA loan #2253116004) to the Frontier Fun

1

Center, Inc., an entity associated with the Main Street Galleria. (*Id.*) The borrower listed on the loan was the Main Street Galleria. (*Id.*) On January 2, 2009, Wells signed an "Unconditional Guarantee" ("UG") with the SBA (form number 148, October 1998 edition). (*Id.*) Wells was listed as the Guarantor on the loan, the Main Street Galleria was listed as the Borrower, and NSDC was listed as the Lender. (*Id.* at 20). Pursuant to the UG, Wells waived "to the extent permitted by law, many and numerous conceivable rights he may have had as a debtor and guarantor, including rights of redemption of collateral, rights to notice of almost any stripe, and nearly all contractual, equitable, and other defenses, including commercial responsibility on the part of the Lender in collecting and enforcing the debt and guarantee." (*Id.* at 6). In the event that Wells defaulted on the SBA loan, the SBA would "purchase" the loan from NSDC.

Wells defaulted on the loan sometime between February 1 and April 30, 2010. (ECF No. 1-2 at 6). Pursuant to the UG, the SBA purchased the loan from NDSC on May 1, 2010. (*Id.*) On June 4, 2010, Wells asserts that the SBA was required to accelerate the loan "as delineated in the Deed of Trust with the recording of a Notice of Default," but it failed to do so. (*Id.*) According to Wells, the NSDC was responsible for liquidation activities until it tendered its final wrap-up report on February 23, 2012. Despite its obligations, neither it nor the SBA followed federal laws and regulations regarding the notice and due process provisions. (*Id.*) For instance, on March 26, 2012, the SBA sent default letters to various guarantors related to the Frontier Fun Center project, but Wells was not among them. (*Id.*) Because of the SBA inaction, Wells alleges that he was unable to take any action to save the underlying Frontier Fun Center project. (*Id.* at 7). On October 23, 2012, the SBA charged off the loan, and on March 4, 2014, it referred the loan to the U.S. Department of the Treasury for collection through the Treasury Offset Program. (*Id.* at 6).

Wells alleges that he first received notice about the status of the loan from the Treasury Department on March 5, 2014, when it sent him a notice of unpaid delinquent debt. (ECF No. 1-2 at 7). Wells disputed the debt, but on May 7, 2014, the Treasury Department referred the debt to a private debt collection company for "further enforcement" and collection. (*Id.*) After disputing the debt with the private company, the company "ceased" enforced collection activities and promised to investigate the validity of the Treasury claim. (*Id.*) Wells alleges that he did not hear from that

2

private company again. On May 20, 2015, Wells asserts that a different private collection company contacted him regarding the SBA loan and that he once again disputed it, but this collection company ignored his dispute. (*Id.*) Instead, it sent a notice of Administrative Wage Garnishment ("AWG") to Wells, and he responded by tendering a request for an AWG hearing. (*Id.*). Wells lodged objections to the collection of his alleged debt on July 19 and September 7, 2017. (*Id.*) Despite his objections, the SBA issued a "Garnishment Hearing Decision" that rejected Wells's objections and ordered a garnishment of 15% of his disposable monthly income. (*Id.* at 8).

Wells filed this action in Nevada state court on January 10, 2018. (ECF No. 1-2). In his complaint, he alleges six causes of action against both NSDC and the SBA: (1) common law breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) equitable subrogation; (4) violation of his right to procedural due process; (5) a declaration of his rights under the SBA loan; and (6) injunctive relief against defendants from collecting on the alleged debt. The SBA removed the action to federal court on June 21, 2018. (ECF No. 1). Both the SBA and NSDC now seek dismissal of Wells's complaint.

## II. Legal Standard

The SBA and NSDC both request dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, a complaint must satisfy Federal Rule of Civil Procedure 8(a)(2)'s notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; a pleading, however, that offers " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' " will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 667 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual

3

content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.*

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Iqbal*, 556 U.S. at 667. Even so, "bare assertions. . .amount[ing] to nothing more than a formulaic recitation of the elements of a. . .claim. . .are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 681) (brackets in original) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 556 U.S. at 681.) "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

As an alternative to dismissal, NSDC requests summary judgment on all Wells's claims. Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show 'that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party

must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the non-moving party. *See id.* at 252.

### III. Discussion

The SBA argues that Wells's action against it should be dismissed for three independent reasons. First, Wells failed to properly serve the United States with a copy of his complaint and summons, and therefore, the Court does not have personal jurisdiction over the SBA. (ECF No. 13 at 3). Second, Wells's complaint fails to allege a proper jurisdictional basis for his claims or demonstrate that the United States has waived its sovereign immunity regarding them. (*Id.* at 4). Third, the SBA specifically requests dismissal of Wells's declaratory relief claim because he relied on state law (rather than federal law) in pleading it. (*Id.* at 7). In turn, NSDC also requests dismissal of Wells's entire complaint. It first argues that it was no longer a party to Wells's SBA loan after May 1, 2010, so it could not be liable for any alleged breaches between Wells and the SBA, and as such, it cannot be subject to any declaratory or injunctive relief. (ECF No. 3 at 9, 13–14). Second, equitable subrogation does not apply to Wells because he has not alleged that "he has completed payment of the SBA loan owed by the borrower [and] therefore obtains the rights held by his predecessor in interest." (*Id.* at 12). Third, it argues that as a non-state actor, it did not owe

Wells any procedural due process rights. (*Id.* at 12–13). In alternative to dismissal of the complaint, NDSC requests that the Court view certain documents attached to its motion to dismiss and convert it into a motion for summary judgment. (*Id.* at 6).

The Court will address the SBA's motion to dismiss first.

### A. The SBA's Motion to Dismiss

The SBA first argues that Wells failed to perfect service of process to it when he failed to serve the United States Attorney General with a copy of his complaint and the corresponding summons. (ECF No. 13 at 3). As such, Wells's complaint should be dismissed for a lack of personal jurisdiction. (*Id.* at 4). In response, Wells argues that because his action was originally filed in Nevada state court, he should not be held to the requirements of Federal Rule of Civil Procedure 4 when serving federal agencies. (ECF No. 27 at 5–6). He states that he perfected service under the Nevada Rules of Civil Procedure, which, at the time, did not have a specific rule for serving federal agencies. (*Id.* at 6).

A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Federal Rule of Civil Procedure 4. *Crowley v. Bannister*, 734 F.3d 967, 974–75 (9th Cir 2013) (citing *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009)). " 'Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint.' " *Id.* at 975 (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986)). Even so, neither actual notice nor "simply naming the person in the caption of the complaint" gives the Court personal jurisdiction over the defendant if service was not made in "substantial compliance" with Rule 4. *Id.* (citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)). The plaintiff has the burden of demonstrating that service of process was valid. *R. Griggs Grp. Ltd. v. Filanto Spa*, 920 F.Supp. 1100, 1102 (D. Nev. 1995). To properly serve a United States agency or officer in his or her official capacity, a plaintiff must both serve the United States and send a copy of the summons and complaint by registered or certified mail to the agency or official. Fed. R. Civ. P. 4(i)(2). To serve the United States, a plaintiff must deliver a copy of the summons and complaint to (1) the United States Attorney for the federal district where

the action is brought or the civil-process clerk at the office and (2) the Attorney General of the United States in Washington, D.C. Fed. R. Civ. P. 4(i)(1)(A)-(B).

Here, Wells does not contest the fact that he did not serve former Attorney General Jeff Sessions with a copy of his complaint and the corresponding summons at his office in Washington, D.C. There is also no evidence to indicate that following removal of this case to federal court, he properly served the Attorney General with the required documents. *See* 28 U.S.C. §1448. He therefore has failed to perfect service upon a United States agency as required by Federal Rule of Civil Procedure 4(i). Wells's argument that he be excused from following the requirements of Rule 4(i) because the Nevada Rules of Civil Procedure did not contain requirements for service upon federal agencies is unconvincing. In March 2019, Nevada substantially revised its rules regarding service of process to mirror the federal service of process requirements. Nevada Rule of Civil Procedure 4.3(a)(5) now states that "[s]ervice upon the United States and its agencies, corporations, officers, or employees may be made as provided by [Fed. R. Civ. P. 4]." Prior to the March 2019 amendments, the Nevada rules provided little guidance of how to serve a federal agency in state court. But that does not mean that Wells was without any guidance at all. Importantly, the revised Nevada rules also contain requirements for serving state agencies: Rule 4.2(d) requires that a plaintiff serve a copy of the summons and complaint on both the Attorney General of Nevada and the head of the administrative agency. But unlike the rule regarding service on federal agencies, this requirement was already codified in N.R.S. §41.031(2). *See Johnson v. Clark County Sch. Dist.*, 2016 WL 3156059, at *2 (D. Nev. June 3, 2016) (noting the requirements of §41.031(2) in 2016). Despite there being a requirement to serve the Nevada Attorney General when suing a state agency in state court, Wells did not serve the United States Attorney General when suing a federal agency in state court. Thus, he cannot now claim that he substantially complied with the Nevada service of process rules by not serving the United States Attorney General.

In any event, the Nevada Rules of Civil Procedure, even prior to the recent amendments, are based in large part upon their federal counterparts. *McGowen, Trustee of McGowen & Fowler, PLLC v. Second Judicial District Court in and for County of Washoe*, 432 P.3d 220, 224 (Nev.

7

2018) (citing *Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 38 P.3d 872, 876 (Nev. 2002)). Absent explicit guidance from the Nevada rules on to how to serve a federal agency, Wells should have looked to the federal rules for assistance. He did not, and the Court must conclude that Wells did not properly serve the SBA as a result.

Federal Rule of Civil Procedure 4(m) states that if a defendant is not properly served within 120 days after the complaint is filed, the Court must dismiss the action without prejudice against the defendant unless the plaintiff shows good cause for the failure. *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001). A plaintiff can show good cause by demonstrating, at a minimum, excusable neglect. *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991). A plaintiff is also required to show the following three factors: (1) the party to be served received actual notice of the lawsuit; (2) the defendant would suffer no prejudice; and (3) the plaintiff would be severely prejudiced if the complaint was dismissed. *Id.* If good cause is not established, then the Court may extend time for service upon a showing of excusable neglect. *Lemoge v. U.S.*, 587 F.3d 1188, 1198 (9th Cir. 2009). Excusable neglect "encompasses situations in which the failure to comply with a filing deadline is attributable to negligence" or omissions caused by carelessness. *Id.* at 1192 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 394, 388 (1993)). To determine if a plaintiff has met this standard, the Court primarily examines four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000).

Neither Wells nor the SBA have addressed these factors in their briefing. But because it is Wells's burden to demonstrate good cause or excusable neglect, the Court finds that he has failed to do so. *See Edwards v. Nevada*, 2017 WL 5947374, at *1 (D. Nev. Nov. 30, 2017) ("Where the validity of service is contested, the burden is on the party claiming proper service to establish its validity."). Accordingly, the Court will dismiss Wells's causes of action against the SBA without prejudice for want of personal jurisdiction.

///

///

**B. NSDC's Motion to Dismiss**

<u>1. Breach of Contract (Claims 1 and 2)</u>

Turning to NDSC's motion to dismiss, it first argues that the Court should dismiss Wells's breach of contract-related claims because all the breaches Wells alleges occurred after NDSC was no longer a party to the contract. (ECF No. 8 at 9). In his complaint, Wells states that the SBA "purchased the [l]oan from the NSDC" on May 1, 2010," but the actions that premise his breach of contract action (mostly related to the alleged failure to give notice of the delinquency) all occurred following the SBA purchase. Wells focuses his counterarguments on the validity of the UG, arguing that most of the rights he purportedly forfeited within that document are not valid waivers under Nevada law. (ECF No. 10 at 5). Essentially, both parties arguments turn on what is (or is not) contained within the UG.

As a general rule, a district court cannot consider any material beyond the pleadings in ruling on a 12(b)(6) motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). If the Court does decide to consider matters outside the pleading, then the Court must treat the motion as one for summary judgment, and all parties must be given a reasonable opportunity to present relevant material. *Id.* (citing Fed. R. Civ. P. 12(b)(6)). The Court may, however, consider material "properly submitted as part of the complaint" on a motion to dismiss without converting it into a motion for summary judgment. *Id.* Attached to Wells's state court complaint is the SBA's garnishment hearing decision, which also includes the UG he signed with NSDC and SBA. (ECF No. 1-2 at 20). NSDC has also attached a copy of the UG with its motion to dismiss, along with other documents. Therefore, the Court may consider the UG attached to Wells's complaint as part of his complaint without treating NSDC's motion as one for summary judgment.

District courts typically apply federal law in cases in which a federal agency is a party. *American Intern. Enterprises, Inc. v. F.D.I.C.*, 3 F.3d 1263, 1268 (9th Cir. 1993) (citing *U.S. v. Kimbell Foods, Inc.*, 440 U.S. 715, 726 (1979)). Even so, state rules of decision will "frequently" furnish an appropriate and convenient measure of the governing federal law. *Id.* Specifically applicable to this case is *Kimbell Foods*, where the Supreme Court held that when adjudicating issues arising out of SBA loan contracts, the law of the state where the loan was entered into should

apply. *Kimbell Foods, Inc.*, 440 U.S. at 729–30. Therefore, the Court will apply Nevada contract law in construing the UG. In Nevada, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) a breach by the defendant; (3) damage as a result of the breach. *Contreras v. American Family Mutual Ins. Co.*, 135 F.Supp.3d 1208, 1227 (D. Nev. 2015). Additionally, all Nevada contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits "arbitrary or unfair acts by one party that work to the disadvantage of the other. *State Dep't of Transp. v. Eighth Judicial District Court in and for County of Clark*, 402 P.3d 677, 683 (Nev. 2017).

In terms of the assignment of contracts, in the "absence of a statute or a contract provision to the contrary, there are no prescribed formalities that must be observed to make an effective assignment." *Easton Bus. Opp. v. Town Executive Suites*, 230 P.3d 827, 832 (Nev. 2010). Assignments that change the material terms of the contract are not valid, but a mere change in the person to whom the payment is to be made is not ordinarily material. *Id.* at 830. Also invalid are assignments that increase the non-assigning party's obligations or risks under the contract. *Ruiz v. City of North Las Vegas*, 255 P.3d 216, 261–62 (Nev. 2011). The assignor must also manifest a present intention to transfer its contract right to the assignee for a valid assignment to occur. *Id.* (citing *Stuhmer v. Centaur Sculpture Galleries*, 871 P.2d 327, 331 (Nev. 1994)).

In his complaint, Wells states that following the default on his SBA loan, the SBA "purchased" the loan pursuant to the UG on May 1, 2010. (ECF No. 1-2 at 6). The Court will construe this "purchase" as an assignment of contractual rights. There is no clause within the UG that prohibits such an assignment, and because the assignment from NSDC to the SBA only changed the entity to which Wells was indebted, the change was not material. The assignment was therefore valid on its face. A close review of the UG does not reveal any provision that gives the original lender (NSDC) any rights or responsibilities under the contract once the SBA purchases the loan. Wells has not alleged any facts within his complaint indicating that he had any relationship with NSDC following his default and the SBA purchase of his loan. Thus, taking all the facts set forth in Wells's complaint as true, NSDC was not a party to the SBA loan at the time Wells alleges that the Lender (the SBA) breached the contract by not following proper notice

procedures. It is axiomatic that Wells cannot hold a non-party to the contract liable for a breach of contract claim, even if that non-party was originally a party to the contract.

Wells argues that the assignment through the UG did not truly relieve NSDC of its all its responsibilities under the loan because pursuant to the terms and conditions, the "Lender" had certain rights and general powers. (ECF No. 10 at 13). While it is true that the UG granted the "Lender" certain rights and powers, Wells overlooks the fact that he himself has pleaded that the SBA loan was purchased from NSDC by the SBA on May 1, 2010. At the time the UG was signed (January 2, 2009), the Lender was NSDC, but following the SBA purchase on May 1, 2010, the Lender could only have been, according to Wells's complaint, the SBA. Wells is essentially arguing that the entity designated as the Lender in the UG did not change despite the SBA purchasing the SBA loan. Based on the facts alleged by Wells in his complaint, this assertion cannot be true as such a result would lead to illogical results. For instance, one of the Lender's general powers is the ability to "[r]elease any Borrower or any guarantor of the Note" from their obligations under it. (ECF No. 1-2 at 21). It would be illogical to have the SBA purchase a loan from NSDC but then also allow NSDC to immediately relieve Wells of any obligation of repaying the loan that it had sold to another entity.

Wells further argues that the waivers contained within UG are unenforceable under Nevada law because Nevada would never allow a guarantor like Wells to waive the debtor and guarantor rights waived within the UG. (ECF No. 10 at 5). Even if Wells is correct, it does not change the fact that NSDC was no longer a party to the contract when the SBA's alleged breaches occurred, and therefore, the Court must dismiss Wells's causes of action for breach of contract and a violation of the covenant of good faith and fair dealing against NSDC.

<u>2. Equitable Subrogation (Claim 3)</u>

Wells's third claim against NSDC is for equitable subrogation. In Nevada, the doctrine of subrogation allows a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance. *American Sterling Bank v. Johnny Management LV, Inc.*, 245 P.3d 535, 428–29 (Nev. 2010). In other words, "it arises when one party has been compelled to satisfy an obligation that is ultimately determined to be the obligation of another." *AT&T*

*Technologies, Inc. v. Reid*, 855 P.2d 533, 535 (Nev. 1993). Subrogation exists independently of any contractual relation between the parties. *Id*. In his complaint, Wells alleges that NSDC has "destroyed or impaired the subrogation right" he had in "all the securities and collaterals and means of payment under...NSDC's control" by failing to provide adequate notice of default and "preserve the value of the security and collateral for the benefit of the guarantor." (ECF No. 1-2 at 10). In briefing, Wells states that he modeled his equitable subrogation claim not on Nevada law, but rather Arizona law because "there is no great ocean of Nevada case law defining with precision the parameters of equitable subrogation." (*Id*. at 17). But even so, Wells asserts that he is permitted to argue that Nevada law be extended to encompass Arizona's view on equitable subrogation. (*Id*.)

While Wells is correct that he is allowed to argue for a good faith extension of Nevada law, he cannot do so in federal court. When sitting in diversity jurisdiction, federal courts are bound to follow the law of the forum state and "do not participate in the evolution of state law." *Zick v. Version Allsteel Press Co.*, 623 F.Supp. 927, 930 (N.D. Ill. 1985). This Court cannot rewrite Nevada law to incorporate common law principles from another state. In any event, under Nevada law, Wells has not pleaded any facts indicating that he has a valid subrogation claim against NSDC. He has not indicated what debt belonging to another he was unfairly forced to pay; if Wells is referring to the SBA loan, the ones responsible for repayment of the loan were the Guarantor (Wells) and the Borrower (Main Street Galleria, LLC, an entity which he managed and was an investor in). (ECF No 1-2 at 20). Thus, it was his and his company's responsibility for repaying the loan, and Wells has not identified any individual or entity that should have paid the loan on his behalf. Moreover, Wells has not set forth any facts indicating that he actually did make a payment on the loan, which is a necessary element of any subrogation claim. Finally, the actions that Wells alleges in support of his equitable subrogation claim against NSDC all occurred after the SBA purchased the loan from it. As the Court explained above, Wells cannot use events that occurred after NSDC was no longer a party to a contract as the basis for his claims. The Court will accordingly dismiss this cause of action.

///

///

12

### 3. Procedural Due Process (Claim 4)

Wells's fourth claim against NSDC is for a violation of his procedural due process rights. He argues that his rights were violated when NSDC denied him notice that he was in default and did not an afford him an opportunity to be heard before starting collection proceedings against him. (ECF No. 1-2 at 11). This claim, however, is defective for several reasons. First, Wells does not set forth any facts indicating that it was NSDC – rather than the SBA – that deprived him of his due process rights. In his complaint, Wells alleges that NSDC was "responsible for liquidation activities until it tendered its final wrap-up report on February 23, 2012." (*Id.* at 6). But it is not clear from his complaint how NSDC could be responsible for "liquidation activities" when the SBA purchased the SBA loan from it on May 1, 2010. (*Id.*) This is especially so when the only specific activities alleged by Wells following the May 1 purchase were undertaken by the SBA, not NSDC.

Second, Wells has not alleged any facts that, if assumed to be true, would establish that NSDC is a state actor. To state a procedural due process claim, the plaintiff must show, as a threshold matter, that a state actor deprived him of a constitutionally protected life, liberty, or property interest without first having an opportunity to be heard. *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). In his complaint, Wells asserted that NSDC is a "non-profit entity" doing business in Nevada. (ECF No. 1-2 at 4). He has not pleaded any facts indicating that NSDC is a state entity (as the SBA is), so for Wells to hold it liable for a procedural due process violation, he must show that NSDC was a state actor. State action may be found only if there is "such a close nexus between the State and the challenged action that seemingly private behavior may be treated as that of the State itself." *Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008) (en banc)). Whether such a "close nexus" exists depends on whether the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must...be deemed to be that of the state." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Alternatively, a plaintiff can show that an entity is a state actor when it exercises powers "traditionally" and "exclusively" reserved to the state. *Jackson v. Metropolitan*

13

*Edison Co.*, 419 U.S. 345, 352 (1974). The functions that have been found to be "exclusively reserved" to the state are few. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978). A private entity can also become a state actor if "such a relationship exists between the state and the [private entity] it regulates that the state may be considered a joint participant" in the conduct at issue. *Blum v. Yaretsky*, 457 U.S. 991, 1010 (1982). Finally, a private entity can be considered a state actor when the state compels it to take a particular action. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170–71 (1970).

Wells has not pleaded any facts that give rise to an inference that NSDC was a state actor. The only information concerning NSDC in Wells's complaint is that it is a non-profit and that it was responsible for "liquidation activities until it tendered its final wrap-up report on February 23, 2012." (ECF No. 1-2 at 6). Merely stating that NSDC is a non-profit is insufficient to make it a state actor. *Watkins v. Mercy Med Ctr.*, 520 F.2d 894, 896 (9th Cir. 1975). As to the second point, Wells asserts in briefing that NSDC, like other "[SBA] Preferred Lender[s]," is subject to 15 U.S.C. §636(a) and other federal regulations and SBA policy directives. (ECF No. 10 at 11). NSDC is also required to make "detailed filings and reports." (*Id.*) But the mere fact that a private business is subject to state (or federal) regulation does not turn its actions into those of the state. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Thus, Wells cannot rely on the fact that NSDC is subject to SBA regulations in attempting to link it with the SBA. But even if he could, these facts are not pleaded in Wells's complaint, and the Court declines to read them into his complaint. Fed. R. Civ. P. 12(d). The Court will accordingly dismiss this claim.

### 4. Declaratory and Injunctive Relief (Claims 5 and 6)

Finally, NSDC seeks to dismiss Wells's fifth and sixth causes of action, which seek declaratory relief and injunctive relief respectively. Wells seeks declaratory relief from the Court affirming that the waivers contained within the UG are invalid under Nevada law, and injunctive relief from NSDC attempting to garnish his wages and other forms of income to pay off the loan. (ECF No. 1-2 at 12). Both of these counts will be dismissed. First, declaratory relief against NSDC is inappropriate because Wells has not alleged any facts indicating that NSDC is still a party to the UG. Second, injunctive relief against NSDC is inappropriate because Wells has not alleged any

facts indicating that NSDC has participated in any of the actions (wage garnishment) that he seeks to enjoin. As such, there is nothing for the Court to enjoin.

In lieu of dismissing Wells's complaint against NSDC with prejudice, the Court will grant him leave to amend on five of his six claims. Federal Rule of Civil Procedure 15(a) allows for a court to grant a party leave to amend a complaint "when justice so requires," because the rule's underlying purpose is to facilitate decisions on the merits rather than pleadings or technicalities. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). Leave to amend should only be denied if allowing the amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). There is no reason to believe that allowing Wells to amend his complaint will prejudice NSDC, and given the fact that Wells originally filed his complaint in state court, he should be given an opportunity to remedy the factual deficiencies within it. The Court will, however, dismiss Wells's claim for equitable subrogation with prejudice for the reasons stated within this order.

### IV. Conclusion

IT IS THEREFORE ORDERED that the SBA's motion to dismiss (ECF No. 8) is **GRANTED**. Wells's claims against the SBA are **DISMISSED WITHOUT PREJUDICE**.

IT IS FURTHER ORDERED that NSDC's motion to dismiss (ECF No. 13) is **GRANTED**. Wells's first, second, fourth, fifth, and six claims against NSDC are **DISMISSED WITHOUT PREJUDICE**, and Wells's third claim against NSDC is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

DATED this 22nd day of April, 2019.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE